UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| ANGELICA HERNANDEZ, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5: 25-061-DCR |
| ) | |
| V. ) | |
| ) | |
| FRANK BISIGNANO, Commissioner of ) | **MEMORANDUM OPINION** |
| Social Security ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

Plaintiff Angelica Hernandez ('Hernandez") appeals Commissioner of Social Security Frank Bisignano's (the "Commissioner") denial of her claim for disability insurance benefits. She contends that the Administrative Law Judge ("ALJ") assigned to her case erred in determining her residual functional capacity ("RFC"). Upon review of the record and the parties' arguments, the Court finds that the ALJ's decision is supported by substantial evidence and correctly-applied rules of law. Accordingly, the Commissioner's motion for judgment [Record No. 14] will be granted, and Hernandez's motion [Record No. 12] will be denied.

**I.**

Hernandez filed a Title II application for disability insurance benefits on October 19, 2022, alleging a period of disability beginning November 30, 2020. [Record No. 8; Administrative Transcript 82, 176-77, hereafter, "Tr."] Her claim was denied on March 29, 2023, and upon reconsideration. Hernandez then submitted a request for a administrative hearing before an ALJ which was held on January 3, 2024. On March 4, 2024, ALJ Robert Bowling issued a decision denying Hernandez benefits. Hernandez then unsuccessfully sought

review from the Appeals Council. Thus, the matter is now ripe for judicial review pursuant to 42 U.S.C. § 405(g).

## II. Legal Standard

A "disability" under the Social Security Act (the "Act") is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step sequential evaluation process." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

> First, the claimant must demonstrate that [she] has not engaged in substantial gainful activity during the period of disability. Second, the claimant must show that [she] suffers from a severe medically determinable physical or mental impairment. Third, if the claimant shows that [her] impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, [she] is deemed disabled. Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform [her] past relevant work, in which case the claimant is not disabled. Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as [her] age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.

*Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 399 (6th Cir. 2018) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

Review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards in reaching his decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial

evidence is defined as such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings must be upheld if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

Hernandez was twenty-nine years old when she first applied for disability insurance benefits. [Tr. 96] She had several jobs prior to this application, including as a nurse assistant, check cashier, retail manager, admitting clerk, sales attendant, salesclerk, and a patient intake clerk. [Tr. 95] Hernandez filed an application for a period of disability on October 19, 2022, alleging that her disability began on November 30, 2020. [Tr. 82, 176-77] From 2022-2023, Hernandez attempted to work several jobs but was unsuccessful. [Tr. 85] However, she has acquired sufficient insurance coverage to remain insured through December 31, 2027. Thus, for the purpose of evaluating her impairments, the relevant period is between November 30, 2020, and December 31, 2027. [Tr. 82]

The ALJ conducted the five-step analysis required for evaluating social security disability cases. [Tr. 84-97] As noted above, at step one, an ALJ considers whether the claimant engaging in substantial gainful activity during the relevant period. 20 CFR § 404.1520(b). A claimant engages in substantial gainful activity when she performs significant physical or mental activities for pay or profit. 20 CFR § 404.1572(b). Here, the ALJ found that, following her accident on November 30, 2020, Hernandez was unable to work for a few weeks and was only able to work part-time when she returned to work in mid-December 2020. [Tr. 84] She returned to full-time work in March 2021, but was allowed to work partially from home and remained employed until December 2021, when she voluntarily resigned. [*Id.*] The

ALJ found her work in 2021 amounted to substantial gainful activity. [*Id.*] From 2022-2023, Hernandez attempted to work at several jobs but was unsuccessful, and the level of work activity did not rise to the level of "substantial gainful activity" as her total countable earnings did not meet the threshold set by Social Security Regulations in either year. [Tr. 85]

At Step Two, the ALJ determined that Hernandez has several "severe" medically determinable impairments, including "disorders of the skeletal spine, neurocognitive disorder; diabetes mellitus; osteoarthrosis and allied disorders; depressive, bipolar and related disorders; autism spectrum disorder; anxiety and obsessive-compulsive disorders; attention deficit hyperactivity disorder; intellectual disorder; and obesity." [Tr. 85] The ALJ further found that those impairments "significantly limit the ability the ability to perform basic work functions as required by SSR 85-28." [Tr. 85] The ALJ listed Hernandez's other conditions in his analysis, including "pain, fatigue, shortness of breath, weakness, nervousness, or periods of poor concentration." [*Id.*] However, he found they did not affect her ability to perform work-related activities absent a showing of an additional medically determinable impairment. [Tr. 85] The ALJ's findings reflect evaluation of the entire record as he analyzed both Hernandez's severe and non-severe limitations in coming to his determination that she had several significant medically determinable impairments.

At Step three, the ALJ considers whether the claimant's impairments are of a severity to meet or equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. He determined that the did not. [Tr. 86] In reaching this conclusion, the ALJ extensively analyzed Hernandez's medical conditions, carefully examining the record and completely analyzing each listed condition and its severity. [Tr. 86-89] The ALJ specifically considered Hernandez's back and spinal injuries, diabetes mellitus, mental limitations, and limitations

given her height and weight, but found these conditions provided no more than slight to moderate limitations on her ability to manage herself.

At Step four, the ALJ found that Hernandez has the RFC to perform light work subject to specified limitations. An individual's RFC reflects her ability to do physical and mental activities on a sustained basis despite limitations from her impairments. 20 CFR § 404.1545. Here, the ALJ found Hernandez was limited to only occasionally lifting more than twenty pounds, sitting for six hours in an eight-hour work day with normal breaks, standing or walking for six hours in an eight hour work day with normal breaks, pushing or pulling her body weight, she can only occasionally be exposed to extreme temperatures, can only occasionally interact with the public, and can adapt to situational changes that are gradual and occasional. [Tr. 89]

The ALJ further referenced Hernandez's statements concerning her pain, physical limitations, and anxiety and found the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical and other evidence in the record for the reasons explained in this decision. [Tr. 90]

The ALJ also provided a detailed account of Hernandez's symptoms and treatment efforts since the onset of her alleged disability. [Tr. 89-95] After considering the entire record and Hernandez's limitations, the ALJ found that Hernandez was unable to perform any of her past relevant work, reasoning that she only retained the RFC "to perform the exertional demands of a limited range of light exertional level work" with numerous limitations. [Tr. 95]

And at Step five, the ALJ found that, when considering Hernandez's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national

economy that Hernandez can perform. [Tr. 96] During the administrative hearing, a vocational expert testified that given these factors, Hernandez could perform work as a bottling line inspector, bagger and garment/ laundry positions, and work as a garment sorter, all jobs which exist in large quantities in the national economy. [Tr. 96] The ALJ found the vocational expert's testimony persuasive and reasoned that Hernandez can make a successful adjustment to other readily available work. [Tr. 97] Thus, the ALJ concluded Hernandez was not disabled as defined by the Act.

### IV. Discussion

**A. The ALJ Properly Evaluated Dr. Skaggs' Opinion in Determining Hernandez's RFC, and His Findings are Supported by Substantial Evidence.**

Hernandez argues that the ALJ erred by failing to account for Hernandez's limitations in sustaining attention and concentration in performing even simple tasks, which she contends was supported by a persuasive medical opinion. [Record No. 12 at p. 5] Specifically, Hernandez claims the ALJ erred in finding she retained the RFC to "sustain attention and concentration towards the performance of simple, repetitive tasks" and that she only "appeared affected by these impairments to a slight to moderate degree." [Record No. 95, 720-721] She asserts this was an error because despite finding Dr. Skaggs' testimony credible, the ALJ formulated an RFC that did not incorporate any additional restrictions related to Hernandez's limits on her ability to pay attention in the performance of simple tasks.

This claim fails because the ALJ considered Dr. Skaggs' opinion and reasonably concluded, after considering additional medical evidence, that Hernandez could "sustain attention, concentration, and pace for simple tasks with regular tolerances." [Tr. 89]

Hernandez begins by noting that the ALJ claims he found Dr. Skaggs's testimony credible. She contends Dr. Skaggs found that Hernandez's ability to sustain attention and concentration would be "affected by [her] impairments to a slight to moderate degree" and yet, the ALJ imposed a less restrictive RFC without explaining why he gave that portion of Dr. Skaggs' opinion less weight than the contradictory evidence. But the ALJ also relied on prior administrative medical findings from state agency psychologists, as well as other medical evidence in the record. The ALJ noted Dr. Skaggs' opinion was consistent with the remainder of the record which indicated Hernandez endured panic attacks, mood fluctuations, and depression that improved and stabilized with medication and therapy. [Tr. 95 *citing* 819-1045, 1055-1150, 1198-1217] Notwithstanding these limitations, the ALJ reasoned that Hernandez could apply simple instructions or procedures, sustain attention and concentration, occasionally interact with the public, and adapt to gradual and occasional situational changes. [Tr. 89-95]

Hernandez asserts the ALJ did not fully consider Dr. Skaggs' opinion because he did not fully incorporate the limits on her ability to pay attention and concentrate in his RFC finding. Dr. Skaggs found Hernandez faced a slight to moderate limitation in her ability to sustain attention and concentration, which, based on the definitions Dr. Skaggs provided, means Hernandez can function between generally well and satisfactorily. [Tr. 720-721] The additional evidence Hernandez provided consists of a neurocognitive evaluation performed by Lindsey Noll, which indicated that Hernandez had been having difficulty with memory and

focus since the accident and that her overall Kokmen score[1] was a 29/39. [Tr. 1235-1236] Hernandez also provided a July 19, 2023, evaluation by Megan Craft, stating that Hernandez is "still dealing with memory issues and foggy-mindedness." [Tr. 1227] However, these additional reports do not support Hernandez's position as there remainsl a discrepancy between her allegations and the objective findings supported by the record. *See McCready v. Comm'r of Soc. Sec.*, 2012 WL 1060088, at *8 (E.D. Mich. Mar. 2, 2012) (observations in "history of present illness" section "are merely the narrative description of plaintiff's subjective complaints and symptoms and are not opinions regarding plaintiff's limitations or restrictions"). Although these reports do show some limitations, they do not demonstrate that a finding of greater limitations was warranted because the ALJ's findings already accounted for her limitations in holding that she could only perform simple tasks.

Hernandez also argues the hypothetical posed by the ALJ to the Vocational Expert was legally deficient and constitutes reversible error because the ALJ asked if "[t]hey can sustain attention, concentration and pace for simple tasks, within regular tolerances, including two-hour time blocks" and then asked whether such a hypothetical person could perform jobs that are generally performed in the national economy. [Tr. 51] Hernadez objects to the hypothetical, alleging that it contradicts Dr. Skaggs' finding that Hernandez's ability to sustain attention and concentration towards the performance of *even simple tasks* would be impeded. [Record No. 12 at p. 9] Hernandez then asserts the ALJ's formulation is of a "materially less restrictive functional capacity, and the ALJ offered no rational for rejecting the very limitation

---

[1] The Kokmen Short Test of Mental Status is a cognitive assessment designed to help diagnose dementia and other cognitive impairments. *See* https://www.ouhsc.edu/age/Brief_Cog_Screen/documents/STMS.pdf.

[as stated by Dr. Skaggs] he otherwise credited." [Record No. 15 at p. 6] But this distinction is immaterial. The hypothetical adequately conveyed Hernandez's limitations, thus her contention that "we cannot determine if the jobs identified by the vocational expert would remain available had the ALJ accounted for heightened limitations in performing simple tasks in the hypothetical" is without merit. [Record No. 12 at p. 11] The "slight to moderate" limitations noted by Dr. Skaggs and the ALJ were reflected in the hypothetical.

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1. Plaintiff Angelica Hernandez's motion for judgment [Record No. 12] is **DENIED**.

2. Defendant Commissioner of Social Security's motion for judgment [Record No. 14] is **GRANTED**.

3. This action is **DISMISSED** and **STRICKEN** from the docket.

Dated: July 16, 2025.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky